86 F.3d 1165
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lance Lewis SMITH, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jay Jeffrey REGAS, aka "JJ," "Cowboy," Defendant-Appellant.
 Nos. 94-10478, 95-10107, 95-10117.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 14, 1996.
Decided May 30, 1996.
 
 Before: ALARCON, BEEZER, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Lance Lewis Smith and Jay Jeffrey Regas appeal from their separate convictions for conspiracy to manufacture and distribute methamphetamine and for conspiracy to distribute cocaine. Regas also appeals his convictions on 14 related drug and tax evasion counts. We have jurisdiction over these consolidated appeals, 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * Smith and Regas argue that the district court abused its discretion by denying their motions to dismiss the indictments for pre-indictment delay.
 
 
 4
 Pre-indictment delay does not violate a defendant's right to due process unless he can first show that he "suffer[ed] actual prejudice as a result of the delay." United States v. Butz, 982 F.2d 1378, 1380 (9th Cir.) (emphasis added), cert. denied, 114 S.Ct. 250 (1993). If the defendant "fails to demonstrate actual prejudice, our inquiry ends." United States v. Manning, 56 F.3d 1188, 1194 (9th Cir.1995). Smith and Regas do not direct us to any evidence demonstrating that they suffered actual prejudice because of the pre-indictment delay, and we decline to presume actual prejudice, as they ask us to do, inasmuch as our cases require an affirmative showing. We therefore conclude that the district court did not abuse its discretion by denying their motions to dismiss.
 
 II
 
 5
 Smith and Regas also argue that the delay in bringing them to trial violated their Sixth Amendment right to a speedy trial. We disagree.
 
 
 6
 The Sixth Amendment to the Constitution "guarantees that in all criminal prosecutions, the accused shall enjoy the right to a speedy trial." Doggett v. United States, 505 U.S. 647, 651 (1992) (internal quotations omitted). To determine whether that has occurred, we examine "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." Id. at 651; see also United States v. Beamon, 992 F.2d 1009, 1012 (9th Cir.1993). None of these four factors, however, is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." Barker v. Wingo, 407 U.S. 514, 533 (1972). Rather, we must consider them "together with such other circumstances as may be relevant" and must "engage in a difficult and sensitive balancing process." Id. In short, "we have to look at the length of the delay and the reasons for it independently under factors (1), (2) and (3) of Barker; we again look at those same factors collectively, as they bear upon our decision to presume prejudice under factor (4)." United States v. Aguirre, 994 F.2d 1454, 1456 (9th Cir.), cert. denied, 114 S.Ct. 645 (1993); see also Beamon, 992 F.2d at 1012-15.
 
 
 7
 * The government concedes that the first Barker factor--an uncommonly long delay before trial--weighs in favor of Smith and Regas. But the parties disagree about the length of that delay, for Sixth Amendment purposes. We conclude that the delays were at most 20 (Smith) and 25 (Regas) months, the time between their 1991 federal indictments and the August 3, 1993, commencement of their trial on the charges brought in those indictments. United States v. Cordova, 537 F.2d 1073, 1075 (9th Cir.) ("speedy trial right under the Sixth Amendment [is] not activated until the date of federal accusation") (emphasis added), cert. denied, 429 U.S. 960 (1976).
 
 
 8
 We reject Smith's contention that his right to a speedy trial in this case was triggered when federal authorities arrested him on other drug charges in March 1989, for which he was subsequently convicted in a separate proceeding. United States v. Gonzalez-Sandoval, 894 F.2d 1043, 1050 (9th Cir.1990) (Sixth Amendment's right to a speedy trial began when the defendant was indicted on the conduct for which he later was convicted, not when he was first arrested and charged with unrelated conduct); cf. United States v. Cepeda-Luna, 989 F.2d 353, 356-57 (9th Cir.1993) (the Speedy Trial Act "require[s] a nexus between the arrest and subsequent criminal charges"). We also do not agree that Regas's speedy trial right commenced with his earlier arrest by state and federal authorities on state drug charges, United States v. Soto, 1 F.3d 920, 923 (9th Cir.1993) ("the date of the defendant's state arrest does not initiate the federal prosecution for the purpose of his speedy trial right"), inasmuch as Regas has not shown that the arrest was collusive and "constituted a mere temporary device used to restrain [him] until federal authorities might choose to prosecute," Cordova, 537 F.2d at 1076 (citations and quotations omitted); see also Cepeda-Luna, 989 F.2d at 357 (the Speedy Trial Act can be applied to civil deportation arrests "if federal criminal authorities ... collude with civil or state officials to have those authorities detain a defendant pending federal charges solely for the purpose of bypassing the requirements of the [act]").
 
 B
 
 9
 We must next examine Barker 's second factor, the reasons for the post-indictment delay. Barker explained that the government's bad faith or negligence in causing unnecessary delay should weigh against the government--although the former more heavily than the latter--while delay caused by valid reasons should not. Barker, 407 U.S. at 531 (footnote omitted).
 
 
 10
 The district court was persuaded that the reasons offered by the government were in fact valid ones. Ruling on the motion to dismiss for pre-indictment delay, the court found that Regas and Smith failed to show that the delay was either purposeful or oppressive, that the violent nature of the crimes alleged and threats to cooperating witnesses provided a reason to seal the earlier indictments, that this was a complex case, and that there were legitimate prosecutorial objectives (including entry of the IRS into the investigation) which justified the delay. Because this factual finding "is essentially a determination that the government has not been negligent [or acted in bad faith], we must review it 'with considerable deference.' " Aguirre, 994 F.2d at 1457 (quoting Doggett, 505 U.S. at 652). Smith and Regas point to nothing in the record to convince us that the district court's finding is clearly erroneous, and so we conclude that it is not. See United States v. Bracy, 67 F.3d 1421, 1426-27 (9th Cir.1995) (concluding, in a companion case to this one, that the district court did not commit clear error when it found that the government had legitimate prosecutorial goals for sealing the indictments at issue here until January 1993). Accordingly, we weigh Barker 's second factor--reasons for the delay--against a conclusion that the defendants' speedy trial rights were violated.
 
 
 11
 We reject Smith and Regas's contention that this case is like Doggett, Beamon, or United States v. Shell, 974 F.2d 1035 (9th Cir.1992), where we weighed this factor against the government and in favor of a speedy trial violation. In those cases, unlike here, the government's negligence caused the delay in bringing the defendants to trial.
 
 C
 
 12
 Barker 's fourth and final factor is prejudice.[1] "Where the government proceeds 'with reasonable diligence,' the 'speedy trial claim would fail ... as a matter of course however great the delay, so long as [the defendant] could not show specific prejudice to his defense.' " Aguirre, 994 F.2d at 1456 (quoting Doggett, 505 U.S. at 656). A defendant may attempt to show actual prejudice by presenting proof that the post-indictment delay has harmed one or more of the three interests protected by the speedy trial right: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Barker, 407 U.S. at 532; see also Beamon, 992 F.2d at 1014.
 
 
 13
 Smith and Regas do not contend that they suffered oppressive pretrial incarceration or experienced anxiety or concern over the charges alleged in the indictments. And while they suggest that the delay actually prejudiced their ability to mount a defense to the charges, they fail to point to any witnesses who were lost to them, or inability to counter the government's case or to offer evidence to rebut specific acts with which they were charged. Accordingly, we conclude that the fourth Barker factor weighs against a speedy trial violation.
 
 
 14
 We reject Smith and Regas's contention that under Doggett and Shell, they need not show actual prejudice. In Shell, we read Doggett as holding that "no showing of prejudice is required when the delay is great and attributable to the government." Shell, 974 F.2d at 1036. But here the delays of 20 (Smith) and 25 (Regas) months are not "great" when measured by the five year delay in Shell and eight and a half year delay in Doggett. The delays are only 8 to 13 months longer than the one year threshold that usually triggers the speedy trial inquiry under Barker. See Doggett, 505 U.S. at 652 n. 1. As we concluded in Beamon, "[t]his is not close to the delay of eight times the one year benchmark in Doggett, or to the delay of five times that point in Shell." Beamon, 992 F.2d at 1014. Moreover, again unlike those in Doggett and Shell, the delays here were not attributable to the government's negligence, but rather, were in furtherance of several legitimate prosecutorial objectives. Accordingly, because Smith and Regas have shown no actual prejudice to their defense, their Sixth Amendment rights were not violated.
 
 III
 
 15
 Smith and Regas argue that we should exercise our supervisory power to reverse their convictions because the government used five "fundamentally unfair tactics" to obtain them.
 
 
 16
 We "recognize[ ] only three legitimate bases for the exercise of the supervisory power: to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal conduct." United States v. Simpson, 927 F.2d 1088, 1090 (9th Cir.1991) (citing United States v. Hasting, 461 U.S. 499, 505 (1983)). Moreover, "reversals of convictions under the court's supervisory power must be approached 'with some caution.' " Hasting, 461 U.S. at 506 (citing United States v. Payner, 447 U.S. 727, 734 (1980)); see also Simpson, 927 F.2d at 1091 (explaining that "[d]ismissing an indictment with prejudice ... will be permitted only in cases of flagrant prosecutorial abuse").
 
 
 17
 We conclude that the five alleged "unfair tactics" do not warrant reversal. First, we have already rejected the challenge to the government's use of "delayed secret indictments." Bracy, 67 F.3d at 1426-27. Second, although we have previously questioned the manageability of "mega conspiracies," see United States v. Baker, 10 F.3d 1374 (9th Cir.1993), cert. denied, 115 S.Ct. 330 (1994), Smith and Regas offer no particularized instances of "flagrant prosecutorial abuse" in this case. Third, the court did not abuse its discretion either by not conducting an evidentiary hearing before letting Agent Dell'Ergo testify (the trial judge had heard Dell'Ergo testify on the same issues a few months earlier during the trial of codefendants, United States v. Quinn, 18 F.3d 1461, 1464-65 (9th Cir.), cert. denied, 114 S.Ct. 2755 (1994)), or by permitting Dell'Ergo to testify, inasmuch as his testimony was based on "other specialized knowledge" that would assist the jury in resolving the case, United States v. Alonso, 48 F.3d 1536, 1539-40 (9th Cir.1995) (no abuse of discretion by allowing "law enforcement officers to explain how a defendant's conduct conforms to typical 'methods and techniques employed in an area of criminal activity' ") (citation omitted). For this reason, we do not agree with Smith and Regas that the admission of Dell'Ergo's testimony ran afoul of Daubert v. Merrell Dow Pharmaceuticals, Inc., 125 L.Ed.2d 469, 481 (1993) (limiting its new test to the "scientific context"). Fourth, the government's use of leading questions did not deny Smith or Regas a fair trial. See Turner v. Marshall, 63 F.3d 807, 818 (9th Cir.1995) (recognizing that "some leading questions can be proper and would only justify reversal if their use amounted to a denial of a fair trial"). Fifth, we have previously held that "the government did not suppress information about Fleischer's criminal background," Bracy, 67 F.3d at 1428, and that any delayed disclosure of impeachment evidence "did not preclude impeachment because the court allowed cross-examination of Fleischer after the information was disclosed," id. at 1428 n. 4. Sixth, the fact that the United States Attorney's Office for the District of Nevada has tried other cases in the same manner does not warrant reversal unless the tactics used in this case were improper, which we have held they were not.
 
 IV
 
 18
 Smith argues that there was insufficient evidence to convict him of conspiracy because there was insufficient proof of a single overall conspiracy or of his knowledge of and membership in such a conspiracy.
 
 
 19
 A single conspiracy, as opposed to multiple conspiracies, "is one overall agreement to perform various functions to achieve the conspiracy's objectives." United States v. Shabani, 48 F.3d 401, 403 (9th Cir.1995) (internal quotations and citation omitted). A single conspiracy "may include subgroups or subagreements," United States v. Patterson, 819 F.2d 1495, 1502 (9th Cir.1987), and "[t]he evidence need not exclude every hypothesis other than a single conspiracy exists," id. The evidence presented here, viewed in the light most favorable to the government, establishes that Regas was the mastermind of an ongoing drug manufacturing and distribution operation that included many of the same members and tasks. Although the evidence also shows that there were several subgroups and subagreements within this operation, including two involving Smith, these merely served to implement the overall purpose of the scheme, which was for all involved to make money from selling drugs. We conclude that this evidence was sufficient to permit a rational jury to find beyond a reasonable doubt that there existed a single conspiracy.
 
 
 20
 "Once a conspiracy has been established, evidence of only a slight connection with it is sufficient to establish a defendant's participation in it." United States v. Castaneda, 16 F.3d 1504, 1510 (9th Cir.1994). Taken in the light most favorable to the government, the evidence proved that Smith was fully aware of the structure and purpose of the Regas conspiracy, including its main members and their respective roles, see United States v. Kearney, 560 F.2d 1358, 1362 (9th Cir.) (government need not prove that "co-conspirator knew all of the purposes of and all of the participants in the conspiracy"), cert. denied, 434 U.S. 971 (1977), and that Smith actively participated in the conspiracy through his direct involvement in the December 1986 and April 1987 Clydesdale labs. This evidence was sufficient to permit a rational jury to conclude beyond a reasonable doubt that Smith was a member of the Regas conspiracy.
 
 V
 
 21
 Smith argues that the district court erred in concluding that the April 1987 Clydesdale methamphetamine lab constituted direct evidence of the conspiracy rather than inadmissible "other crimes" evidence. We disagree.
 
 
 22
 Evidence will not be considered "other crimes" evidence under Fed.R.Evid. 404(b) when it "and the evidence concerning the crime charged are inextricably intertwined." United States v. Williams, 989 F.2d 1061, 1070 (9th Cir.1993) (evidence of drug transactions that predated the charged conspiracy and of others that were not charged was not "other crimes" evidence) (internal quotations omitted). Here, the government charged the April 1987 Clydesdale lab as part of the conspiracy, and the evidence showed numerous factual similarities between that lab and the December 1986 lab, including that both operated in the same location, manufactured methamphetamine, and most importantly, involved Smith, Regas, and many of the same coconspirators. The evidence demonstrates that the April 1987 Clydesdale lab was "closely linked" to the overall conspiracy, and therefore was not "other crimes" evidence.
 
 VI
 
 23
 Smith argues that the district court committed plain error by not giving a specific unanimity instruction to the jury regarding the time frame of the conspiracy.
 
 
 24
 In the ordinary case, "a general instruction that the verdict must be unanimous will be sufficient to protect the defendant's rights." United States v. Anguiano, 873 F.2d 1314, 1319 (9th Cir.), cert. denied, 493 U.S. 969 (1989). A specific unanimity instruction should be given, however, when it appears "there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts." United States v. Echeverry, 719 F.2d 974, 975 (9th Cir.1983), modifying 698 F.2d 375 (9th Cir.1983).
 
 
 25
 The jury's note here did not indicate any confusion about the existence of multiple conspiracies, as the note in Echeverry did, but rather, only a concern about whether the single conspiracy had to begin and end on the specific dates alleged in the indictment. The district court properly addressed that concern by reiterating that the government had to prove beyond a reasonable doubt that the single conspiracy charged in fact existed within the specific dates alleged in the indictment. We therefore can discern no basis for concluding that there was a genuine possibility of jury confusion or that there was a genuine risk that the jury might have convicted Smith without unanimously agreeing upon the dates of the single conspiracy of which he was a member.
 
 VII
 
 26
 Smith maintains that the district court erred by permitting testimony about his involvement in several methamphetamine labs in 1988 that were not charged in the indictment.
 
 
 27
 Under Fed.R.Evid. 404(b), evidence of prior or subsequent bad acts may not be admitted to prove a defendant's character, but it may be admitted for other purposes, such as to show knowledge and intent, if, among other requirements not challenged by Smith here, the evidence proves a material element of the offense for which the defendant is charged. United States v. Basinger, 60 F.3d 1400, 1407-08 (9th Cir.1995). "In addition, the probative value of the evidence must outweigh its prejudicial effect under Rule 403." Id. at 1408.
 
 
 28
 Smith's knowledge of and involvement in other methamphetamine labs is relevant to a material element of the conspiracy charge because it tends to show his knowledge of the existence, scope, extent, and complexity of the conspiracy, as well as his intent to participate in it. Id.; United States v. Corona, 34 F.3d 876, 881 (9th Cir.1994). We cannot say that admission of the evidence under Rule 403 was an abuse of discretion, especially given the other evidence of knowledge and intent, the limited extent of the other bad acts evidence, and the court's limiting instructions to the jury regarding the narrow purpose for which they could consider this testimony. Basinger, 60 F.3d at 1408.
 
 VIII
 
 29
 Smith contends that the district court committed clear error by finding that an October 1988 conversation, during which Smith attempted to discourage codefendant Green from cooperating with the authorities, was in furtherance of the charged conspiracy. However, by attempting to discourage Green from cooperating, Smith was seeking to preserve the continued operation of the conspiracy. In short, "[b]ecause the [conversation] was an attempt to conceal the conspiracy, it may also be considered to have been made 'in furtherance of' the conspiracy." United States v. Lim, 984 F.2d 331, 336 (9th Cir.), cert. denied, 508 U.S. 965 (1993).
 
 IX
 
 30
 Smith argues that the district court abused its discretion by receiving evidence of his admissions to a police detective, after his arrest, about his involvement in making methamphetamine in the two to three years preceding March 1989. We disagree, inasmuch as the admissions tended to prove his knowledge of and involvement in the April 1987 Clydesdale methamphetamine lab, which the court had ruled was part of the charged conspiracy.
 
 X
 
 31
 Smith contends that his sentence violated the Ex Post Facto Clause because it was based on the Sentencing Guidelines existing at the time of sentencing rather than those existing in 1988.
 
 
 32
 "Conspiracy is a continuing offense, which is charged and punished as one crime from beginning to end." United States v. Inafuku, 938 F.2d 972, 973 (9th Cir.1991), cert. denied, 502 U.S. 1034 (1992). As such, "[w]hen one agrees to be a member of a conspiracy, one agrees to all acts that have been or will be committed by the conspiracy, and, by virtue of that agreement, is responsible for such acts regardless of one's role in their commission." Id. at 974. This is so "until there is affirmative evidence of abandonment, withdrawal, disavowal or defeat of the object of the conspiracy." United States v. Castro, 972 F.2d 1107, 1112 (1992), cert. denied, 507 U.S. 944 (1993).
 
 
 33
 Smith was convicted of actively participating in a conspiracy that continued into early 1992. He offered no affirmative evidence of withdrawal, and in fact, the evidence presented at trial showed that he remained involved, by attempting to prevent discovery of the conspiracy, at least through October 1988. We therefore conclude that the district court properly applied the Sentencing Guidelines existing at the time of Smith's sentence. Castro, 972 F.2d at 1112. The two cases on which Smith relies, United States v. Smallwood, 35 F.3d 414 (9th Cir.1994), and United States v. Johns, 5 F.3d 1267 (9th Cir.1993), do not suggest otherwise, inasmuch as neither involves a conspiracy or other continuing offense conviction.
 
 XI
 
 34
 Regas argues that he was entitled to a Franks evidentiary hearing on his motion to suppress because the affidavit in support of the search warrant omitted a material fact, and that the court should have granted his motion because the affidavit contained stale information and the warrant was overbroad. We disagree.
 
 
 35
 "To be entitled to a Franks hearing, [a defendant] had to make a substantial preliminary showing that the affidavit contains deliberate or reckless omissions of facts that tend to mislead and demonstrate that the affidavit supplemented by the omissions would not be sufficient to support a finding of probable cause." United States v. Collins, 61 F.3d 1379, 1384 (9th Cir.), cert. denied, 116 S.Ct. 543 (1995). Even if Regas were correct that omitting the word "ham" from the affidavit was deliberate or reckless and designed to mislead the magistrate, he failed to "demonstrate that the affidavit supplemented by the [word 'ham'] would not be sufficient to support a finding of probable cause." Collins, 61 F.3d at 1384.
 
 
 36
 We also reject Regas's contention that the district court should have granted his motion to suppress because the affidavit submitted in support of the warrant contained stale information. "The mere lapse of substantial amounts of time is not controlling in a question of staleness." United States v. Dozier, 844 F.2d 701, 707 (9th Cir.) (citation omitted), cert. denied, 488 U.S. 927 (1988). We must evaluate staleness "in light of the particular facts of the case and the nature of the criminal activity and property sought," and we "may properly infer that equipment acquired to accomplish the crime and records of the criminal activity will be kept for some period of time." United States v. Greany, 929 F.2d 523, 525 (9th Cir.1991) (citations omitted). Even when an affidavit contains some stale information, probable cause is not lacking where "the older information was coupled with recently obtained information." United States v. Vaandering, 50 F.3d 696, 700 (9th Cir.1995).
 
 
 37
 While the affidavit here contains some "old" information, it nevertheless provided probable cause for issuance of the search warrant. As in Vaandering, the affidavit also contains recent information of Regas's ongoing and related criminal activity. For example, the affidavit states that during a trash search conducted on December 22, 1992--less than two months prior to the issuance of the search warrant--authorities found marijuana and the handwritten "cooking" note. And during a trash search conducted on January 26, 1993, the authorities again found marijuana. In addition, the affidavit recounts that telephone toll analyses and numerous surveillances indicated a continuing association between Regas and his coconspirators, including counter-surveillance tactics from mid-1992 through January 1993. In light of this information, and coupled with the historical evidence of Regas's integral role in a massive and ongoing drug manufacturing and distributing operation, the magistrate had a substantial basis for finding that the affidavit provided the necessary probable cause for issuance of the warrant. Greany, 929 F.2d at 525 (two-year old information not stale because evidence was of a marijuana growing operation); Vaandering, 50 F.3d at 700 (evidence of similar drug transactions occurring twenty-two months prior to the issuance of the search warrant was not stale where it was "coupled with recently obtained information" about drug transactions).
 
 
 38
 We also do not agree with Regas that the search warrant was overbroad. A search warrant need not identify with mathematical precision the exact items to be seized. Rather, a warrant passes constitutional muster in terms of its breadth if it is "reasonably specific in its description of the objects of the search," and even this standard will "var[y] depending on the circumstances of the case and the type of items involved." United States v. Hernandez-Escarsega, 886 F.2d 1560, 1567 (9th Cir.1989) (internal quotations omitted), cert. denied, 497 U.S. 1003 (1990).
 
 
 39
 The search warrant here is like those upheld in Hernandez-Escarsega and United States v. Fannin, 817 F.2d 1379 (9th Cir.1989), in that it "limited the scope of the search to those items related to particular criminal activity that was named and described in the warrant and the attached affidavit." Fannin, 817 F.2d at 1383. The search warrant limited the discretion of the executing agents by condoning the seizure only of those items reflecting the manufacture, possession, or distribution of controlled substances, and in particular cocaine and methamphetamine. "It therefore effectively told the executing officers to seize only those items related to [the] illegal drug [operation]." Hernandez-Escarsega, 886 F.2d at 1568 (internal quotation and citation omitted).
 
 
 40
 Nor is the warrant rendered impermissibly overbroad merely because, as Regas claims, it authorized and resulted in the seizure of virtually every paper in the house. As we explained in Hernandez-Escarsega, when the affidavit portrays the defendant "as the kingpin of an extensive narcotics distribution network," there exists sufficient probable cause "to believe that all of [his] personal and business activities [are] pervaded by his involvement with narcotics." Hernandez-Escarsega, 886 F.2d at 1568. In that situation, "the breadth of the seizure is justified by the breadth of the probable cause." Id. Here, the affidavit provided probable cause to believe that Regas was the mastermind of a massive and ongoing narcotics manufacturing and distribution conspiracy, and that his home and its contents were inextricably linked to the conspiracy. The breadth of this probable cause justified the breadth of the search warrant.
 
 
 41
 The two cases Regas cites, United States v. Spilotro, 800 F.2d 959 (9th Cir.1986), and United States v. Kow, 58 F.3d 423 (9th Cir.1995), do not support his challenge. In Spilotro, we held unconstitutional four "hopelessly general" and wide-sweeping search warrants that failed to describe the nature of the suspected criminal offenses, and merely recited an exhaustive list of United States Code titles and sections. Spilotro, 800 F.2d at 964. Here, however, the warrant was much more narrow and was limited to specifically identified criminal offenses. In Kow, we struck down as unconstitutionally overbroad a warrant that authorized the seizure of essentially every business record in the defendant's "legitimate" business office, because "[d]espite its length and complexity, [the] affidavit [presented in support of the warrant] did not establish the probable cause required to justify [such a] widespread seizure of documents." Kow, 58 F.3d at 427. Here, of course, Regas was not conducting a legitimate business out of his home, and the warrant specifically limited the seizable items to those materials related to the suspected illicit business of drug manufacturing and distribution.
 
 XII
 
 42
 Regas argues that certain counts were barred by the statute of limitations. "Generally speaking, the return of an indictment tolls the statute of limitations with respect to the charges contained in the indictment." United States v. Pacheco, 912 F.2d 297, 305 (9th Cir.1990). And "this rule also applies to sealed indictments, as long as the indictments were properly sealed for legitimate prosecutorial objectives[,] [because] [i]n such cases, the indictment is deemed found for purposes of the statute of limitations when it is returned, rather than when it is unsealed." Bracy, 67 F.3d at 1426. We cannot say that the district court clearly erred in finding that the ongoing criminal investigation, and the violent nature of the crimes alleged and threats made to cooperating witnesses, provided legitimate reasons for sealing the indictments past the running of the statute of limitations.
 
 
 43
 Nor do we agree with Regas that the district court should have granted his Rule 29 motion as to counts 5 and 6 because the government "substantially amended" those counts after the statute of limitations period had expired. The addition of the quantities of drugs sold and the specific locations of the transactions are not material variances in the proof that would have prejudiced Regas's substantive rights. United States v. LeMaux, 994 F.2d 684, 690 (9th Cir.1993) ("variances between the amounts of cocaine charged in the indictment and the amounts proved at trial did not prejudice [the defendant's] substantive rights and so were not fatal to the prosecution's case"). And the change in the location of the second cocaine sale was not a substantial amendment to the indictment, inasmuch as the proof offered at trial "substantially resembled that charged in the original indictment." United States v. Sears, Roebuck & Co., Inc., 785 F.2d 777, 779 (9th Cir.), cert. denied, 479 U.S. 988 (1986).
 
 XIII
 
 44
 Regas argues that the district court violated the Ex Post Facto Clause by applying the amended Sentencing Guidelines to calculate his sentence on the CCE conviction because all of the criminal activity pertinent to that charge occurred prior to the effective date of the amended Guidelines, November 1, 1988.
 
 
 45
 We held in Castro that the district court did not violate the Ex Post Facto Clause when it applied the amended Guidelines to sentence Castro on a conspiracy conviction, where the conspiracy commenced before but continued after the effective date of the amended Guidelines. Castro, 972 F.2d at 1112; see also Bracy, 67 F.3d at 1434 ("continuing offenses, like conspiracy, which are initiated before, but not concluded until after the effective date of the Guidelines, are subject to sentencing under the Guidelines").
 
 
 46
 Here, as in Castro and Bracy, the conspiracy continued long after the effective date of the amended Guidelines. The district court made a specific and detailed factual finding that
 
 
 47
 the continuing criminal enterprise and the conspiracy charged in count three continued at least until early 1992. And after that time there was no definite cut-off, so that I don't think we can say that the continuing criminal enterprise or the conspiracy charged in count three necessarily terminated in early 1992, which is the last date of any testimony to any activity on the part of the conspiracy.
 
 
 48
 The court based this finding, in part, on its acceptance of the trial testimony of Debbie Penberthy--who testified to Regas's distribution of one pound of methamphetamine in late 1989 to mid 1990--and Steven Pennebaker--who testified to a two ounce distribution of methamphetamine in early 1992. The judge remarked that both witnesses had undergone thorough cross-examination and yet he found them to be credible regarding these drug transactions. Accordingly, we conclude that the court's factual findings, based as they are on credibility determinations, are not clearly erroneous, and that the court therefore correctly sentenced Regas under the amended Guidelines.
 
 
 49
 We reject Regas's contention that the testimony of Penberthy and Pennebaker was simply incredible and unreliable. The district court believed otherwise, and we will not set aside its firsthand observation of the witnesses' demeanor and credibility. Moreover, while we agree with Regas that U.S.S.G. § 6A1.3 requires that the district court rely on only information that has a sufficient indicia of reliability, Penberthy and Pennebaker's testimony was under oath and both were subjected to vigorous cross-examination. Cf. United States v. Huckins, 53 F.3d 276, 279 (9th Cir.1995) (explaining that witness testimony was not inherently reliable where not made under oath at trial and subject to cross-examination).
 
 
 50
 We also disagree with Regas that the district court could not rely on the post-1988 criminal conduct because the jury acquitted Regas on certain counts that charged him with post-1988 conduct. The district court correctly recognized that while it couldn't use alleged post-1988 conduct for which Regas was acquitted, it could use other post-1988 conduct that evidenced a continuing criminal enterprise. Because the district court did not rely on evidence of post-1988 conduct for which the jury had acquitted Regas, this case is not like United States v. Brady, 928 F.2d 844 (9th Cir.1991), where we held that the court erred by sentencing the defendant based on "a finding of fact ... that the jury ha[d] necessarily rejected by its judgment of acquittal." Id. at 851.
 
 
 51
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The government concedes that the third Barker factor, whether Smith and Regas timely asserted their constitutional right to a speedy trial, weighs in their favor