UNITED STATES of America,
Plaintiff–Appellee,

v.

Lyle Douglas ROBISON, Defendant–
Appellant.

United States of America,
Plaintiff–Appellee,

v.

Robert Kay Johnston, aka "Bobo",
Defendant–Appellant.

No. 00–30211, 00–30225.
D.C. No. CR–99–00052–GF–DWM.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 12, 2001.

Decided July 17, 2001.

Before B. FLETCHER, BRUNETTI and FISHER, Circuit Judges.

MEMORANDUM*

Appellants Lyle Douglas Robison and Robert Kay Johnston, along with several

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

others, were involved in a conspiracy to manufacture and distribute methamphetamine in violation of 21 U.S.C. §§ 841 and 846. The conspirators allegedly made methamphetamine at various sites throughout Montana and Idaho, over a period of nearly two years. After being arrested, all of the conspirators except Appellants pled guilty and agreed to cooperate with the government's investigation. Robison proceeded to trial and was convicted; Johnston, however, pled guilty on the morning of his trial.

Appellants believe their sentences violate *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). They each raise various other arguments, which we address in turn.

## DISCUSSION

### I. ROBISON AND JOHNSTON'S APPRENDI ISSUES

■ As their principal argument, Robison and Johnston contend that their sentences violate *Apprendi* and *United States v. Nordby,* 225 F.3d 1053, 1058 (9th Cir. 2000). *Apprendi* and *Nordby* hold that any fact, such as drug quantity, that increases a defendant's sentence beyond the prescribed statutory maximum must be charged in an indictment and established by a jury determination. Here, the amount of drugs involved was not included in either defendant's indictment and was eventually determined by the court at sentencing. The district court sentenced Robison to 180 months of imprisonment and four years of supervised release based on its determination that he was involved in the manufacture of 453 grams of methamphetamine. It sentenced Johnston to 121 months and four years supervised release based on 300 grams of methamphetamine production.

Although both Appellants' prison terms are less than the maximum prescribed term for an undetermined amount of methamphetamine, 240 months, the government conceded at oral argument that Appellants' four-year terms of *supervised release* exceed the statutory maximum, which is three years. *See* 18 U.S.C. § 3559 (offenses punishable by less than 25 years but 10 or more years are Class C felonies) and 18 U.S.C. § 3583 (the period of supervised release for a Class C felony cannot be more than three years). Appellants' sentences violate *Apprendi* under this court's recent opinion in *United States v. Velasco–Heredia,* 249 F.3d 963, 968–69 (9th Cir.2001) (holding that where a sentence includes a period of supervised release above the maximum period of supervised release allowed by the relevant drug statute, *Apprendi* has been violated). Thus, both Appellants must be resentenced.

### II. ROBISON'S ARGUMENTS

### A. DISCOVERY AND *BRADY* VIOLATIONS

Robison alleges numerous violations of Fed.R.Crim.P. 16 and of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**1. Rule 16(a)(1)(C) violation: failure to relinquish physical evidence.**

■ Robison argues the government violated Fed.R.Crim.P. 16(a)(1)(C) by not physically turning over to defense counsel certain tangible items seized during the search of his house. To reverse a conviction for discovery violations, the district court must not only have abused its discretion, but the error must also have resulted in prejudice to the defendant's substantial rights. *United States v. Amlani,* 111 F.3d 705, 712 (9th Cir.1997).

Rule 16(a)(1)(C) does not require the government physically to give the defendant tangible objects it intends to use at

trial. Rather, it states only: "Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph ... tangible objects ...." *Id.* Here, the government notified Robison of the items it had in its possession and intended to use at trial. Robison never requested to examine any of the items. Thus, there was no violation of Rule 16(a)(1)(C).

## 2. Rule 16(a)(1)(E) violation: failure to disclose summary of expert witness testimony and failure to disclose intent to call expert.

■ Robison also believes the government failed to comply with its discovery obligations under Rule 16(a)(1)(E) by failing to inform him that an expert witness, DEA chemist Dr. Phyllis Quinn, would testify and by not providing him with a summary of her proposed testimony. The government admittedly failed to provide a written *summary* of Dr. Quinn's testimony; it did, however, produce her *entire* report.

■ Even assuming an abuse of discretion on the part of the district court, reversal for a Rule 16(a)(1)(E) violation is not justified unless a defendant's substantial rights are affected. *See United States v. Basinger,* 60 F.3d 1400, 1407 (9th Cir. 1995). Robison had Dr. Quinn's entire report, and was on notice that an expert would testify about the substances found at the site and their relationship with methamphetamine production. He was notified by the government's document production that it intended to use the chemist's report at trial. He also was fully aware of the "relevant evidence seized from the shed that formed the basis for [Dr. Quinn's] testimony." *Basinger,* 60 F.3d at 1407. Moreover, the court ultimately struck the opinion offered by Dr. Quinn that was the most damaging to Robison, and admonished the jury to disregard it. Any Rule 16 violation by the government's failure to produce a summary of Dr. Quinn's report did not prejudice Robison's substantial rights, a prerequisite for reversal.

## 3. *Brady* violation: failure to turn over letter to witness Kinney.

■ Robison also contends the government violated his rights under *Brady v. Maryland* when it failed to disclose to him the existence of an anonymous letter to a co-conspirator, Ron Kinney, who pled guilty to various charges and testified against Robison. "[S]uppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment." *Brady,* 373 U.S. at 87, 83 S.Ct. 1194. The duty to disclose encompasses impeachment as well as exculpatory evidence. *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). To be "material," there must be a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 105 S.Ct. 3375.

■ As an initial matter, it is hardly clear that the letter constitutes *Brady* material. The letter was not "favorable" to Robison, it was not exculpatory and it did not contain information that might impeach a witness. In any event, Robison cannot show a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375. Kinney was only one of many government witnesses. Other co-conspirators testified, as did various law enforcement officials. In short, there was overwhelming evidence against Robison. Had the letter bolstering Kinney's testimony

been disclosed, the result of the trial would likely have been the same.

## B. ROBISON'S SENTENCING AMOUNT

■ Lastly, Robison contends the district court's determination that he was responsible for 453 grams of methamphetamine was not supported by even a preponderance of the evidence. When a precise drug quantity cannot be ascertained, the Sentencing Guidelines direct district courts to "approximate the quantity of the controlled substance.... In making this determination, the court may consider ... the size or capability of any lab involved." U.S.S.G. § 2D1.1, Application Note 12.

In addition,

> [t]his court specifically has allowed a sentencing court to calculate "potential" methamphetamine based on seized precursor chemicals, such as ephedrine. We have also approved a sentencing court's reliance on expert testimony that estimates production capability, even when the expert must assume the availability of precursor chemicals that were not seized or were found in short supply.

*Basinger*, 60 F.3d at 1409.

After reviewing the record, including defense counsel's arguments and the relevant expert testimony, we believe the district court's amount determination was supported by a preponderance of the evidence and therefore not clearly erroneous. In addition, any error in the court's determination was harmless. The government's witnesses introduced evidence of 16 "cooks" (accounting for 227 grams); Robison admitted to providing two cases of precursor chemicals (capable of yielding an additional 100 grams); and another witness testified that she had delivered 80 bottles of precursor chemicals (capable of yielding 179 grams of methamphetamine

by the district court's estimates). Although the testimony about the 80 bottles may double count some of the methamphetamine accounted for in the 16 cooks, at least 23 grams can be accounted for by a preponderance of evidence, which is all that is needed to account for 350 grams. Thus, the record supports an amount that would have put Robison in the same sentencing range in which the district court ultimately placed him.

## III. JOHNSTON'S ARGUMENTS

Appellant Johnston raises four issues other than the *Apprendi* issue discussed above. First, Johnston challenges the validity of his guilty plea. Second, he believes the district court improperly applied a gun enhancement at sentencing. Third, he contends the district court improperly enhanced his sentence for the storage of hazardous waste and, fourth, erroneously ordered him to pay restitution for the cost of the hazardous material clean-up.

## A. CHANGE OF PLEA

■ Johnston claims he did not knowingly and voluntarily enter into his plea agreement. Under Rule 11(c)(1), before the district court may accept a guilty plea, it must "inform the defendant of, and determine that the defendant understands, ... the nature of the charge to which the plea is offered ...." To comply with due process, a guilty plea must be made knowingly and voluntarily. *Brady v. United States*, 397 U.S. 742, 748–49, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Furthermore, deviations from Rule 11 constitute reversible error only where the defendant's substantial rights are affected. *United States v. Littlejohn*, 224 F.3d 960, 965 (9th Cir. 2000). The critical consideration "is the defendant's actual knowledge at the time of the guilty plea." *Id.* at 969 (internal citations and quotations omitted).

Johnston's claim that he unknowingly and involuntarily entered his plea is belied by the record, which shows that the district court thoroughly discussed the elements of the charge to which Johnson pleaded, and clearly explained all the possible sentencing outcomes. The court extensively discussed the impact of drug quantity on Johnston's sentence, taking care repeatedly to point out to him that the quantity would be the single-most relevant factor in determining his ultimate sentence. In short, the Rule 11 colloquy establishes that the defendant clearly knew what he was doing—he stated he understood fully the maximum penalty to which he was being exposed and accepted it as a possibility.

## B. GUN ENHANCEMENT

■ Next, Johnston argues the district court erred by enhancing his sentence under Sentencing Guideline § 2D1.1 for possession of a firearm. If the district court finds that the defendant possessed a weapon during the commission of the offense, this enhancement is appropriate. *United States v. Lopez–Sandoval*, 146 F.3d 712, 714 (9th Cir.1998). "[T]he key is whether the gun was possessed during the course of the criminal conduct, not whether it was 'present' at the site." *United States v. Stewart*, 926 F.2d 899, 901 (9th Cir.1991) (upholding an enhancement under § 2D1.1(b)(1) even though the weapon was found at the defendant's home, which was 15 miles from the site where the drug distribution occurred).

Four witnesses, Ron Kinney, Dale Donahoe, Vickie Jackson and Ross Jimison, all testified that Johnston possessed a firearm at various times during the group's methamphetamine manufacturing days. In light of the testimony from these witnesses, and the broad applicability of § 2D1.1(b)(1), the district court acted appropriately in applying the enhancement to Johnston.

## C. HAZARDOUS WASTE SENTENCE ENHANCEMENT

■ Johnston next argues the district court's enhancement of his sentence by two levels under Sentencing Guidelines § 2D1.1(b)(5) was also inappropriate. That section states:

If the offense involved (A) an unlawful discharge, emission, or release into the environment of a hazardous or toxic substance, or (B) the unlawful transportation, treatment, storage, or disposal of hazardous waste, increase by 2 levels.

Johnston does not challenge the fact that hazardous materials were at the site, or the type of hazardous materials at issue. Nor does he claim the hazardous materials were lawfully stored or disposed of. Rather, he argues only that the sentencing provision does not apply to him because: (1) he violated a drug crime, not one of the environmental statutes referenced in the Application Note to this section, and (2) he was not responsible for the hazardous waste. These arguments are without merit.

In context, the enhancement delineated by Guideline § 2D1.1(b)(5) applies to offenses involving the manufacture, distribution and possession of drugs. It is categorized under U.S.S.G. Part D1, "Offenses Involving Drugs (1) Unlawful Manufacturing, Importing, Exporting, Trafficking, or Possession; Continuing Criminal Enterprise." Further, the historical notes to the amendment changing §§ 2D1.11 and 2D1.12, which provide precisely the same hazardous waste enhancement for possession of listed chemicals, explain that these enhancements, like § 2D1.1(b)(5), were meant to address "environmental damage associated with methamphetamine offenses," as directed by the COMPREHENSIVE METHAMPHETAMINE

CONTROL ACT OF 1996, PUB. L. 104–237. *See* U.S. SENTENCING GUIDELINES MANUAL app. C, amend. 605 at 83–84 (Supp.2000).

Application Note 20 to § 2D1.1(b)(5) directs a court to apply the enhancement wherever the offense conduct involved a "discharge, emission, release, transportation, treatment, storage, or disposal violation" of one of the referenced environmental laws. The Note states: "Subsection (b)(5) applies if the conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct) involved any discharge, emission, release, transportation, treatment, storage, or disposal violation *covered* by [among other things] the Resource Conservation and Recovery Act, 42 U.S.C. § 6928(d)." (Emphasis added.)

The government argued that the storage and disposal of hazardous waste at the drug site violated 42 U.S.C. § 6928(d)(2), which prohibits the storage and disposal of hazardous material without a permit. Nothing in the language of the Guideline provision or the Application Note suggests, as Johnston urges, that the enhancement can apply only if a defendant is also *convicted* for violating one of the environmental statutes listed in the Application Note. Significantly, the Note describes the offensive conduct by using the words "covered by," rather than "convicted of" or "charged with" violating an environmental statute. That Johnston was not charged and convicted of such a violation does not mean this activity, like gun possession, cannot be used to enhance his sentence.

█ Moreover, although Johnston did not set the fire that attracted attention to the hazardous waste on the site, he doubtless was aware of its existence. Johnston's argument that he was not directly responsible for creating the waste fails simply because the enhancement punishes activity such as storage, release and dis-

posal, not just creation, of waste. As a member of the conspiracy, he was properly held liable for its conduct, including the storage of waste involved in the production of methamphetamine.

## D. RESTITUTION FOR HAZARDOUS WASTE CLEANUP

█ Finally, Johnston argues the district court's decision forcing him to pay (jointly and severally along with his co-defendants) restitution for the amount of the toxic waste cleanup was erroneous, because restitution to the government is only proper where the government suffers loss due to fraud, embezzlement or theft. Johnston roots his argument in the notion that his crime did not have a "victim" and therefore there is no identifiable entity to make whole. This argument, too, is not persuasive.

18 U.S.C. § 3663(c)(1) provides that "when sentencing a defendant convicted of an offense described in ... the Controlled Substances Act [ ], in which there is no identifiable victim, the court may order that the defendant make restitution in accordance with this subsection." The statute then states that the amount of restitution is to be "based on the amount of public harm caused by the offense, as determined by the court in accordance with guidelines promulgated by the United States Sentencing Commission." 18 U.S.C. § 3663(c)(2)(A). Sentencing Guideline § 5E1.1, following up on this directive no doubt, reiterates that, "[i]n a case where there is no identifiable victim," the court should take into account the "amount of public harm caused by the offense" and order restitution to the community.

Additionally, Application Note 20 to U.S.S.G. § 2D1.1(b)(5) advises that "any costs of environmental cleanup and harm to persons or property should be consid-

ered by the court in determining the amount of restitution under § 5E1.1 (Restitution)." Here, the court determined that Johnston and his co-defendants should be liable for the monetary amount of the toxic cleanup, and earmarked the payment for the local DEA office in Billings, Montana. The court acted within its discretion in ordering restitution under the Guidelines.

Robison and Johnston's convictions are **AFFIRMED.** Their sentences are **VACATED** and we **REMAND** for resentencing.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.