

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-11-2004

# USA v. Landmesser

Precedential or Non-Precedential: Precedential

Docket No. 03-2958

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Landmesser" (2004). *2004 Decisions.* Paper 373.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/373

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

No. 03-2958

UNITED STATES OF AMERICA

v.

ROBERT LANDMESSER,
Appellant

On Appeal from the United States
District Court for the Middle District
of Pennsylvania
District Judge: The Honorable Judge
James F. McClure, Jr.
(D.C. No. 03-cr-35)

Argued May 5, 2004

Before: SLOVITER and FUENTES,
*Circuit J* and POLLAK, *District Judge*[*]

(Filed: August 11, 2004)

---

[*]  The Honorable Louis H. Pollak,
Senior District Judge for the Eastern
District of Pennsylvania, sitting by
designation.

D. Toni Byrd (Argued)
James V. Wade
Office of Federal Public Defender
Middle District of Pennsylvania
Williamsport, PA 17701

Daniel I. Siegel
Office of Federal Public Defender
Middle District of Pennsylvania
Harrisburg, PA 17101

Attorneys for Appellant

Christian A. Fisanick (Argued)
George J. Rocktashel
Thomas A. Marino
Office of United States Attorney
Middle District of Pennsylvania
Williamsport, PA 17701

Attorneys for Appellee

OPINION OF THE COURT

POLLAK, *District Judge*.

On December 25, 2002, appellant
Robert Landmesser ("Landmesser"), along
with two persons not involved in this
appeal, stole anhydrous ammonia from an
agricultural supply business in Mill Hall,
Pennsylvania. The anhydrous ammonia
was to be used to manufacture
methamphetamine. During the theft,
anhydrous ammonia vapor was released
from the tanks, burning Landmesser's eyes
and throat. On the next day, Pennsylvania
state troopers arrested Landmesser.

A federal grand jury returned a one-
count indictment against Landmesser on
February 13, 2003, charging him with theft

of anhydrous ammonia in violation of 21 U.S.C. § 864(a)(1)[1] and 18 U.S.C. § 2.[2] Landmesser entered a plea of guilty, and, based on the factual findings and guideline calculations set forth in the probation official's presentence report, the District Court sentenced Landmesser to 24 months imprisonment.[3] Built into the sentence was a two-level enhancement of the base offense level pursuant to the specific offense characteristic at U.S.S.G. § 2D1.12(b)(2), which applies when the offense involves an "unlawful discharge, emission, or release" into the environment of a "hazardous or toxic substance." The District Court concluded that (1) anhydrous ammonia is a "hazardous substance" and (2) the release of the anhydrous ammonia during the theft constituted an "unlawful discharge, emission, or release."

Landmesser timely filed this appeal.[4] While Landmesser does not dispute the District Court's finding that anhydrous ammonia is a "hazardous substance," he contends that the release of the anhydrous ammonia was not "unlawful," and, therefore, that the two-level enhancement grounded on guidelines section 2D1.12(b)(2) was unwarranted.

For the reasons set forth below, we conclude that the two-level enhancement of Landmesser's sentence was not justified. Accordingly, we will remand the case to the District Court for resentencing.

**District Court Sentencing Ruling**

---

[1]  a) It is unlawful for any person – (1) to steal anhydrous ammonia, . . . knowing, intending, or having reasonable cause to believe that such anhydrous ammonia will be used to manufacture a controlled substance in violation of this part.

21 U.S.C. § 864(a)(1).

[2]  (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2.

---

[3]  The sentence also included a three-year term of supervised release, a special assessment of $100 and a required payment of $71.52 in restitution.

[4]  This court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

The District Court based its sentencing ruling on the presentence report, which calculated Landmesser's offense level pursuant to the applicable offense guideline – U.S.S.G. § 2D1.12. Section 2D1.12 provides, in relevant part:

(a) Base Offense Level (Apply the greater):

(1) **12**, if the defendant intended to manufacture a controlled substance or knew or believed the prohibited flask, equipment, chemical, product, or material was to be used to manufacture a controlled substance; or

(2) **9**, if the defendant had reasonable cause to believe the prohibited flask, equipment, chemical, product, or material was to be used to manufacture a controlled substance.

(b) Specific Offense Characteristics

(1) If the defendant (A) intended to manufacture methamphetamine, or (B) knew, believed, or had reasonable cause to believe that prohibited flask, equipment, chemical, product, or material was to be used to manufacture methamphetamine, increase by **2** levels.

(2) If the offense involved (A) an unlawful discharge, emission, or release into the environment of a

3

hazardous or toxic substance; or (B) the unlawful transportation, treatment, storage, or disposal of a hazardous waste, increase by **2** levels.

U.S.S.G. § 2D1.12.

Because Landmesser "knew" that the anhydrous ammonia "was to be used to manufacture a controlled substance," the District Court set a base offense level of 12 pursuant to U.S.S.G. § 2D1.12(a)(1); additionally, because Landmesser "knew" that the anhydrous ammonia "was to be used to manufacture methamphetamine," the offense level was increased by two levels pursuant to U.S.S.G. § 2D1.12(b)(1).[5] Finally, because the District Court concluded that the offense involved an "unlawful discharge, emission, or release" of a "hazardous

substance," the offense level was increased by an additional two levels pursuant to U.S.S.G. § 2D1.12(b)(2).

At the sentencing hearing, Landmesser objected to the two-level increase pursuant to § 2D1.12(b)(2), maintaining that, although there may have been a release, it was not an "unlawful" one as defined by Application Note 3 to U.S.S.G. § 2D1.12. Application Note 3 states, in relevant part:

Subsection (b)(2) applies if the conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct) involved any discharge, emission, release, transportation, treatment, storage, or disposal violation covered by the Resource Conservation and Recovery Act, 42 U.S.C. § 6928(d), the Federal Water Pollution Control Act, 33 U.S.C. § 1319(c), or the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 5124, 9603(b).[6]

Landmesser argued at the sentencing

---

[5] During Landmesser's change of plea proceeding, the court specifically asked Landmesser if, when he was attempting to steal the anhydrous ammonia, he "knew perfectly well that it was intended to be used for making methamphetamine." Joint App. at 31, ll. 10-13. Landmesser answered this question in the affirmative. *Id*. at l. 14.

[6] The reference in Application Note 3 to 42 U.S.C. § 5124 appears to be a typographical error. Section 5124 of Title 42 does not exist. The Sentencing Commission likely intended to reference 49 U.S.C. § 5124.

4

hearing that, pursuant to Application Note 3, the two-level enhancement could only apply if the government had proved by a preponderance of the evidence that there was a "discharge, emission, or release" violating the Resource Conservation and Recovery Act ("RCRA"), the Federal Water Pollution Control Act ("FWPCA") or the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").

The District Court overruled Landmesser's objection to the proposed sentence enhancement, stating:

> **[The Court]:** Now, the pre-sentence report contains in paragraphs seven through ten, I guess, the offense conduct as summarized by Mr. Rocktashel. And there are about three instances referenced there where there was a release of the vapor.
>
> Paragraph ten refers to the fact that on that particular instance the vapor released from the tanks made Landmesser's eyes and throat burn. Paragraph 13 refers to an entire area being covered in a vapor cloud. Paragraph 14 refers to Landmesser being burned when anhydrous ammonia was released from one of the tanks, and he received medical treatment for the chemical burn at Memorial Hospital in Towanda.
>
> It can hardly be argued that that release was lawful. In other words, that Mr. Landmesser had any, you know, authority to be releasing it. As I understand, the defense counsel's position for it to be considered unlawful under that clause, it has to qualify under application note three as having been a violation covered by those specific sections of the three statutes.
>
> I don't think that's a reasonable interpretation of that section of the guidelines. First of all, the language of application note three is not exclusive, and I think to interpret it as exclusive is not the reasonable, logical interpretation of clause two.
>
> Therefore, the objection is overruled. The Court believes that the conduct in this instance qualifies for that enhancement and that the release of that occurred, and it was unlawful for the purposes of this enhancement.
>
> And even though the Court does not find – I'll

certainly make that of record; the Court does not find it was unlawful with respect to any specific statutory provisions that are recited in the application note three. So that's clear on the record.

**Ms. Byrd:** Just so I'm clear, Your Honor, you're finding it's unlawful because there was a release during the theft?

**The Court:** Yes.

App. 69-70 ll. 13-25.

The District Court then applied § 2D1.12(b)(2)'s two-level enhancement to Landmesser's sentence and sentenced him to 24 months imprisonment.

## Discussion

Our review of the District Court's application of U.S.S.G. § 2D1.12(b)(2) is plenary. *United States v. Brennan*, 326 F.3d 176, 200 (3d Cir. 2003), *cert. denied*, 540 U.S. 898 (2003).

Landmesser argues that the District Court's enhancement of his sentence by two levels under U.S.S.G. § 2D1.1(b)(2) was inappropriate because, as the District Court was at pains to make clear, the conduct for which Landmesser was accountable was *not* found by the District Court to be a "discharge, emission, or release" constituting a "violation covered by" any of the three environmental statutes referred to in Application Note 3.

Landmesser maintains that the District Court's interpretation of "unlawful" in U.S.S.G. § 2D1.1(b)(2) – namely that Landmesser was without "authority to be releasing" the anhydrous ammonia – renders Application Note 3 meaningless. The government contends that Landmesser's arguments fail because he does not cite to any "authority holding that [U.S.S.G. § 2D1.1(b)(2)] requires a violation of one of the specific environmental provisions set forth in the application note."

We find the government's argument unconvincing. Under the basic tenets of statutory construction, which apply to sentencing guideline interpretation, *United States v. Milan*, 304 F.3d 273, 293 (3d Cir. 2002), attention must be addressed to the entirety of a text, with a view to avoiding interpretations that would render any phrase superfluous. *United States v. Swan*, 275 F.3d 272, 280 (3d Cir. 2002). And we have specifically ruled that "[a]n application note must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *United States v. Sau Hung Yeung*, 241 F.3d 321, 325 n.2 (3d Cir. 2001) quoting *United States v. Miller*, 224 F.3d 247, 253 n.8 (3d Cir. 2000).

The Sentencing Commission, in prefacing the phrase "discharge, emission, or release" with the modifier "unlawful" in § 2D1.12(b)(2), manifestly intended the

6

adjective to have meaning.[6] That meaning is found in the text of Application Note 3. Under the language of Application Note 3, § 2D1.12(b)(2)'s enhancement applies if the release of anhydrous ammonia that occurred during the theft was a "violation covered by" one of the three enumerated statutes – RCRA, FWPCA or CERCLA.[7]

---

[6]  Compare U.S.S.G. § 2Q1.2, which addresses Mishandling of Hazardous or Toxic Substances.  The base offense level is 8.  "If the offense resulted in an ongoing, continuous, or repetitive discharge, release, or emission of a hazardous or toxic substance or pesticide into the environment," an increase of 6 levels is called for.  § 2Q1.2(b)(1)(A).  Where the offense "otherwise involved a discharge, release, or emission of a hazardous or toxic substance or pesticide," the required increase is 4 levels.  § 2Q1.2(b)(1)(B).  With respect to the application of this guideline, whether the "discharge, release, or emission" is "unlawful" is not a stated factor.

[7]  The government invokes *United States v. Robison*, 19 Fed. Appx. 490 (9th Cir. 2001), an unpublished, non-precedential Ninth Circuit opinion, in which that court addressed U.S.S.G. § 2D1.1(b)(5) and its Application Note 20, which has subsequently been renumbered Application Note 19.  U.S.S.G. § 2D1.1 is the general drug guideline governing Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These

Offenses).  The base offense level varies dramatically, depending on the type and quantity of the drugs, on whether use of the drugs has resulted in serious injury or death, and on whether the defendant has a prior conviction for a similar offense.  Among the specific offense characteristics is § 2D1.1(b)(5), which provides for a 2-level increase in offense level for "an unlawful discharge, emission, or release into the environment of a hazardous or toxic substance." The initial wording of Application Note 19 (former Application Note 20) is verbatim the initial wording of Application Note 3 of § 2D1.12(b)(2).

The *Robison* court concluded that nothing in the wording of U.S.S.G. § 2D1.1(b)(5) or the application note suggests "that the enhancement can apply only if a defendant is also *convicted* for violating one of the environmental statutes listed in the Application Note." (emphasis in original). *Id*. at 497.  In the instant matter, the government's reliance on *Robison* is misplaced.  Landmesser does not argue that, pursuant to Application Note 3, section 2D1.12(b)(2)'s enhancement would only apply if he had been *convicted* of a violation under one of the three enumerated statutes. Landmesser argues that, to support the two-level enhancement, the sentencing court must make a finding of a violation of one of the three statutes, and that in the case at bar the District Court specifically noted that it had *not* found that the release

7

The District Court expressly stated that it did not find that the release of the anhydrous ammonia was "unlawful with respect to any specific statutory provisions that are recited in the application note three." The District Court concluded that the release of the anhydrous ammonia was "unlawful" because Landmesser, having stolen the anhydrous ammonia, had no "authority to be releasing it." Under the District Court's rationale, § 2D1.12(b)(2) would appear to apply in every instance in which a "discharge, emission, or release" occurs in the course of a theft – an interpretation that would render Application Note 3 essentially meaningless.[8]

---

constituted such a violation.

[8] We find no support for the proposition that the language of Application Note 3 is not exclusive. Nothing in the Note suggests that § 2D1.12(b)(2) is meant to apply to conduct covered by environmental provisions other than the three that are specifically enumerated. *Cf. Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The canon of *expressio unius est exclusio alterius* means that explicit mention of one thing in a statute implies a congressional intent to exclude similar things that were not specifically mentioned."). For the application of *expressio unius est exclusio alterius* to interpretation of the guidelines, see *United States v. Milan, supra*, 304 F.3d at 293.

The government's brief presents a

Accordingly, Landmesser's sentence will be vacated and this matter will be remanded for resentencing in accordance with this opinion.

---

further argument captioned as follows: "Even if the District Court Construed § 2D1.12(b)(2) Too Broadly, Landmesser's Conduct Was 'Covered By' the Environmental Provisions Specified in the Application Notes." In support of this argument the government cites two statutes – 42 U.S.C. § 9603(b) and 49 U.S.C. § 5104(b) – and contends that Landmesser's conduct was "covered by" each of these statutes. As to the second of these statutes the government says that what Landmesser did was "'covered' by [the statutory provision], if not constituting an actual violation of that provision." However (as noted above), Application Note 3 only addresses conduct constituting a "*violation* covered by" (emphasis added) a listed statute. And the District Court (as also noted above) expressly "[did] not find [that Landmesser's conduct] was unlawful with respect to any specific statutory provisions that are recited in the application note three."

8